IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

PAUL KUNCL, an individual,      )
      )
      Plaintiff,      )
      )
v.      )      Case No. 08-CV-724-JHP
      )
INTERNATIONAL BUSINESS      )
MACHINES CORPORATION,      )
a foreign corporation      )
      )
      Defendant.      )

## ORDER

Before the Court are Plaintiff's Motion to Compel [Docket No. 30]; Defendant's Response in Opposition [Docket No. 32]; Plaintiff's Reply [Docket No. 38]; and both parties' Supplemental Briefs [Docket Nos. 44 & 45]. Additionally, the Court conducted a hearing on this Motion on July 29, 2009. For the reasons set forth below, Plaintiff's Motion is DENIED.

## BACKGROUND

Plaintiff, Paul Kuncl, filed the current lawsuit against Defendant, International Business Machines Corporation ("IBM"), alleging underpayment of wages in violation of Oklahoma state law and the Fair Labor Standards Act ("FLSA") and breach of contract. From March of 2003 until July 27, 2008, Kuncl was employed by IBM as an on-site IT Lead for IBM's Visteon account at the Tulsa Gas Plant in Tulsa, Oklahoma. As part of his job, Kuncl was required to be "on-call" 24 hours a day, seven days a week. Kuncl alleges that from March of 2003 until February 1, 2008, IBM  misclassified him as an overtime exempt employee under the FLSA. As a result of not receiving overtime or "stand-by" pay, Kuncl claims that he was underpaid for

1

this period of time.  In addition, Kuncl alleges that he was underpaid for a  four week period in July of 2008 during which his classification had changed to "non-exempt," but he received no standby or overtime pay.

The instant Motion to Compel was filed as a result of IBM's objections to Kuncl's discovery requests for documents and information relating to events that arose before July 13, 2007.  IBM asserts that Kuncl's claims arising before July 13, 2007, are precluded by the judgment entered in *Rosenburg et al. v. IBM*,[1] a class/collective action lawsuit in the Northern District of California.  Based on the preclusive effect of the *Rosenburg* judgment, IBM argues that the discovery requests for the pre-July 13, 2007, claims are not within the scope of Fed. R. Civ. P. 26(b)(1) because they cannot lead to the discovery of admissible evidence.  Kuncl argues that the Rosenburg judgment has no preclusive effect on the claims brought in this lawsuit, and therefore IBM's objections to his discovery requests are improper.

I.  The *Rosenburg* Litigation

The facts relating to the *Rosenburg* litigation are not in dispute.  The plaintiffs in *Rosenburg* brought both a Rule 23(b)(3) class action suit and a FLSA collective action suit pursuant to 29 U.S.C. § 216(b).  The practice of combining a FLSA collective action and state-law class action claims in one proceeding is commonly referred to as a "hybrid" action.  In *Rosenburg*, the Rule 23 class action alleged violations of ERISA and various state laws.  The § 216(b) collective action alleged violations of the FLSA.  All of the claims in *Rosenburg* were based on IBM's alleged misclassification of certain employees as exempt from overtime pay requirements.

---

[1]  Case No. CV-06-00430-PJH (N.D. Cal.)

The fact that *Rosenburg* involved a hybrid action is significant because of the difference in how classes are formed under Rule 23 and § 216(b).  In Rule 23(b)(3) class actions, all putative class members are included in the action unless they affirmatively opt-out of the case.  A subsequent judgment in a Rule 23 class action binds all class members that have not opted out.  Conversely, potential plaintiffs in a the § 216(b) collective action must affirmatively opt-in to be bound by a judgment.

As a result of mediation, the representative plaintiffs in *Rosenburg* and IBM reached a settlement.  The *Rosenburg* Court issued an order conditionally certifying the settlement class and collective action, granting preliminary approval to the proposed class action settlement and plan of allocation, directing dissemination of the notice and claim form to the class, and approving the class release. [Docket No. 33-10].  Pursuant to the Settlement Agreement, [Docket No. 33-8] IBM agreed to pay $65,000,000 in exchange for a release of claims by all class members who failed to opt-out of the Rule 23 class.  The class was identified as all current and former IBM employees who held a "Covered Position Code" during the "Covered Period," as those terms are defined by the Settlement Agreement.  Based on his position codes, Kuncl was identified as a Rule 23 class member and a potential FLSA class member.

The Settlement Agreement released all claims, asserted or unasserted, against IBM that arose out of the facts giving rise to the litigation.  The relevant parts of the Settlement Agreement stated:

> Plaintiffs and each individual Class Member who does not timely opt out …
> forever and fully release Defendant … from any and all … claims… that are
> based upon or arise out of the facts, acts, transactions, occurrences, events or
> omissions alleged in the Litigation and that arose during any time that such Class
> Member
> worked in a Covered Position up until the date of the Order granting final

3

approval ("Released Claims"). The Released Claims include without limitation claims asserted in the Litigation and any other claims based on alleged misclassification under state or federal law governing overtime pay, exempt status … failure to make payments due to Class Members had they been classified as nonexempt … and penalties for any of the foregoing, including without limitation claims under … the Fair Labor Standards Act ("FLSA") … and the statutes and regulations of all other states relating to the foregoing ….

Each Class Member who does not timely opt out … is deemed to have acknowledged that this Agreement is intended to include in its effect all claims arising from or based upon the litigation or the facts alleged therein ..., including both asserted and unasserted claims . . .

[Docket No. 33-8, at § 4.1(A)-(B)].

Kuncl received the notice sent to all class members in *Rosenburg*.  The notice advised him of the nature of the lawsuit, the scope of the release and the opportunity to opt-out, the right to object to the settlement, and the binding effect of the release and judgment on class members who do not opt-out.   The terms of the release, itself, were quoted in the notice.  After receiving the notice, Kuncl took no action.  As a result of the differing opt-in/opt-out requirements, Kuncl was included in the Rule 23 ERISA class because he failed to opt-out, but was not included in the §216(b) FLSA class because he did not affirmatively opt-in.  According to the Settlement Agreement, Kuncl, as a member of the Rule 23 class, released IBM from any claims based on the same factual predicate as the *Rosenburg* claims.  On July 12, 2007, the *Rosenburg* Court granted final certification of the class and collective action and final approval of the settlement.  On the same day, the court entered a final judgment dismissing the case with prejudice in accordance with the terms of the Settlement Agreement. [Docket No. 33-20].

II.   The Parties' Arguments

While the facts in this case are not in dispute, the legal effect of the *Rosenburg* judgment on Kuncl's current claims is vehemently disputed.  Kuncl argues that the *Rosenburg* judgment

4

has no preclusive effect on his current claims.  Kuncl does not dispute that his claims arise from the exact same factual predicate as the claims in *Rosenburg*.  Neither does Kuncl dispute that the Settlement Agreement purports to release his claims arising prior to July 13, 2007.  However, Kuncl asserts that he is not bound by the judgment as it pertains to his FLSA claims because he did not opt-in to the FLSA collective action, as is required by § 216(b).  Further, Kuncl argues that his FLSA claims cannot be released as part of the Rule 23 ERISA class settlement, even though he admits that he was properly included as a class member.

IBM takes the position that the *Rosenburg* judgment is binding on Kuncl and, accordingly, his pre-July 13, 2007 claims are precluded under the doctrine of *res judicata*.  In support of this argument, IBM states that, as part of the Rule 23 ERISA class, Kuncl expressly released any future FLSA or state law claims based on his misclassification as overtime exempt through the Settlement Agreement.  The final judgment dismissed with prejudice all claims released in the Settlement Agreement.   Because Kuncl's claims in this action fall within the scope of the *Rosenburg* judgment and release, IBM argues that the judgment is entitled to preclusive effect and Kuncl should be barred from bringing the claims in this suit.  Furthermore, IBM states that Kuncl has not alleged the facts necessary to collaterally attack the *Rosenburg* judgment.

## ANALYSIS

At issue is the preclusive effect, if any, of the *Rosenburg* judgment on Kuncl's FLSA and state law claims in the current case.  This issue appears to be one of first impression.  Despite Kuncl's repeated claim that there is clear precedent in all circuits on the issue, the Court finds this assertion to be in error.  Neither the parties' nor the Court's research has discovered any case

5

involving a hybrid action where a Rule 23 class member who did not opt-in to the FLSA action

attempts to bring FLSA claims in an individual suit subsequent to the entry of a judgment

disposing of such claims in the hybrid action.  Because the Court finds no clear precedent, the

Court must determine whether Kuncl's current claims are barred by analyzing the nature of

hybrid actions, the law pertaining to the *res judicata* effects of class action judgments, and the

language and purpose of the FLSA.

I.   Hybrid Actions

The filing of hybrid lawsuits involving both a Rule 23 class action and a FLSA collective

action appears to be a recent trend.  *See* Thomas A. Linthorst & Richard G. Rosenblatt, *Wage

and Hour Class Actions: Courts Grapple With Conflict Between Rule 23 and FLSA's Opt-in

Requirement*, 188 N.J. L.J. 118 (April 9, 2007).  Hybrid actions have troubled district courts

across the country because of the inherent conflict between the opt-in requirement of FLSA

collective actions and the opt-out requirement of Rule 23(b)(3) class actions.  Class actions

based on state wage laws are governed by Rule 23 of the Federal Rules of Civil Procedure.  Rule

23 allows one or more class members to sue, as a representative party, on behalf of all class

members as long as certain prerequisites are met.  Fed.R.Civ.P. 23(a).  If the court certifies the

class under Rule 23(b)(3), class members must be sent notice which, among other things,

informs them of the nature of the action, their right to exclude themselves from the action, and

the binding effect of the class judgment.  Any member who does not wish to be bound by the

judgment must timely exclude themselves by affirmatively opting out of the class.  Fed.R.Civ.P.

23(c)(2)(B).  On the other hand, group actions brought asserting FLSA rights are known as

collective actions and are governed by § 216(b) of the FLSA.  Section 216(b) states that "[n]o

employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party . . ." 29 U.S.C. § 216(B).  Based on this language courts have found employees must opt-in to be bound by a judgment in FLSA collective actions.  Employees who don't opt-in are not similarly bound.  *See Dolan v. Project Construction Corp.* 725 F.2d 1263, 1266 (10 th Cir. 1984), *abrogated on other grounds by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989).

The most significant effect of using either an opt-in or op-out scheme is the resulting class size.  "Historically, the FLSA's opt-in mechanism has limited the size of the FLSA action, with estimates indicating that typically only between fifteen and thirty percent of potential plaintiff-employees opt-in."  Rachel K. Alexander, *Federal Tails and State Puppy Dogs: Preempting Parallel State Wage Claims to Preserve the Integrity of Federal Group Wage Actions*, 58 Am. U. L. Rev. 515 (February 2009).  The most probable explanation for the low response rate is the idea that "the notice received in the mail is just another piece of junk that the recipient has neither the time nor the interest to read, let alone act on."  *Ellis v. Edward D. Jones & Co.*, 527 F.Supp.2d 439, 444 (W.D. Pa. 2007) (citing Noah H. Finkel, Symposium, *The Fair Labor Standards Act, State Wage-and-Hour Law Class Actions: The Real Wave of "FLSA" Litigation?*, 7 Emp. Rts. & Emp. Pol'y J. 159, 161, 174 (2003)).  This theory behind low opt-in rates in collective actions is also the most likely explanation for the low opt-out rates in Rule 23 class actions.  *Id*. at 445.  Because of these low opt-in and opt-out rates, Rule 23 classes are generally "much larger than the corresponding § 216(b) collective action groups."  *Id*  By filing a hybrid action, plaintiffs, or more aptly their attorneys, are attempting to bring large class/collective actions in federal court by using the Rule 23 opt-out procedure to avoid the opt-

in requirement that would be applicable to a pure FLSA collective action.

Courts across the country have reached differing conclusions as to whether a Rule 23 state-law wage claims may proceed in the same action as an FLSA collective wage claim. Some courts have allowed both claims to proceed in the same action. *See, e.g., Damassia v. Duane Reade, Inc*., 250 F.R.D. 152 (S.D.N.Y. 2008) (certifying Rule 23/FLSA hybrid class over defendant-employer's objection); *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304 (D. Mass. 2004) (certifying hybrid class despite defendant-employer's objection). Other courts have refused to allow hybrid claims for various reasons. *See Ellis*, 527 F.Supp.2d at 452 (dismissing parallel state-law wages claims finding that adjudicating such claims through Rule 23 would negate the congressional intent behind FLSA's opt-in requirement); *Leuthold v. Destination America, Inc*., 224 F.R.D. 462 (N.D. Cal. 2004) (allowing FLSA collective action but refusing to certify state-law class because the plaintiffs could not meet Rule 23(b)'s requirement that a class action be the superior method for fair and efficient adjudication of the controversy); *Bartleson v. Winnebago Indust., Inc*., 219 F.R.D. 629 (N.D. Iowa 2003) (allowing hybrid action, but limiting the state law class to only those plaintiffs who opted in the FLSA action). Additionally, two circuit courts have addressed the issue and reached somewhat opposite conclusions. *Compare Lindsay v. Gov't Employees Ins. Co.*, 448 F.3d 416 (D.C. Cir. 2006) (holding that the district court's reliance on 28 U.S.C. § 1367(a) to decline supplemental jurisdiction over the state law claims was in error, however, on remand the district court could consider declining jurisdiction under § 1367(c)), *with De Asencio v. Tyson Foods, Inc*., 342 F.3d 301 (3rd Cir. 2003) (finding the district court erred in exercising supplemental jurisdiction pursuant to § 1367(c) over the Rule 23 state law claims because of the different opt-in/opt-out requirements in Rule 23 and §

8

216(b), and because the state law claims predominated over the federal claim).

Although many courts have addressed hybrid actions at the class certification stage, the Court is not aware of any case where a court has been required to determine the preclusive effect of a hybrid judgment on a Rule 23 class member who failed to opt-in to the FLSA action. Several courts, however, have speculated as to the *res judicata* effect of such a judgment. *See, e.g.*, *Woodward v. Fedex Freight East, Inc.*, 250 F.R.D. 178, 187, n.7 (M.D. Pa. 2008) (stating in a footnote that requiring "that an employee opt-out of a hybrid action to preserve his FLSA claim is contrary to the letter and spirit of § 216 (b)"); *Guzman v. VLM, Inc.*, 2008 WL 597186, at *10, n.11 (E.D.N.Y. March 2, 2008) (stating that "principles of *res judicata* apply to any class action, whether it contains a simultaneous FLSA claim or not."). These cases are largely unhelpful for several reasons: (1) they are not binding authority; (2) the discussions regarding *res judicata* issues are brief, conclusory, and mere speculation; and (3) there is no consensus among the courts as to the proper resolution of the issue.

II.  Class Action Judgments and *Res Judicata*

The class action is a procedural device "designed to achieve economies of time, effort, and expense, by the elimination of repetitious litigation.  Paramount to the success of this goal is the ability of the courts to render a judgment binding absent class members."  4 William B. Rubenstein, Alba Conte, & Herbert B. *Newberg, Newberg on Class Actions* § 11:64 (4th ed. 2009)  In accordance with this goal, courts have found that "[i]t is well settled that a class action judgment is binding on all class members."  *Pelt v. Utah*, 539 F.3d 1271, 1284 (10th Cir. 2008). Once a binding judgment is entered in an action, the doctrine of *res judicata* "precludes the parties or their privies from relitigating issues that were or could have been raised in that

9

action." *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).  The doctrine of *res judicata* reflects the courts' interest in judicial finality and the conservation of judicial resources. Because Rule 23 class actions strive to achieve many of the same goals, some courts have found that the fact that a judgment was entered in a class action suit "weighs in favor of, not against, applying res judicata."  *See, e.g., Jamerson v. Lennox*, 356 F.Supp. 1164, 1169 (E.D. Pa. 1973).

Additionally, *res judicata* applies with equal force when the prior class action judgment was the result of a settlement, as it was in *Rosenburg*.  *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 648-49 (N.D. Cal. 1978), *aff'd*, 646 F.2d 699 (9th Cir. 1981).  *But see TBK Partners Ltd. v. Western Union Corp.*, 675 F.2d 456, 461 (2d. Cir. 1982) (sating that courts should "be cautious about permitting *issue preclusion* in the context of a settlement of a class action.") (emphasis added).  The procedural safeguards in Rule 23 requiring sufficient notice, adequate representation, and judicial approval of the class settlement were intended to mitigate against the potentially harsh consequences of *res judicata*.  *Id*.  When these requirements are met, a class action defendant should receive the full benefit of the doctrine of *res judicata*, regardless of whether the case advanced to trial or settled prior to trial.  *Id*.  Furthermore, a judgement entered according to a class settlement can bar later claims based on the same facts as the class action claims, even if the precluded claim could not have been presented in the class action.  *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 366 (3rd Cir. 2001).[2]  *See also*

---

[2]  In this case, the Eighth Circuit acknowledged that "it may seem anomalous at first glance that courts without jurisdiction to hear certain claims have the power to release those claims as part of a judgement," however, the court stated that it adopted the rule because it "serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent relitigation of a settled question at the core of a class action."  *Id.* at 366.  (internal quotations and citations omitted).

10

*Thompson v. Edward D. Jones & Co.*, 992 F.2d 187, 191 n.6 (8th Cir. 1993); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 221-22 (5th Cir. 1981).

    III.  <u>28 U.S.C. § 216(b)</u>

    Congress enacted the Fair Labor Standards Act ("FLSA") in 1938.  The FLSA provided employees and their representatives the right to bring an action to recover amounts due under the statute, including unpaid overtime compensation.  29 U.S.C. § 216(b).  *Hoffman-La Roche Inc., v. Sperling*, 493 U.S. 165, 173 (1989).  In 1947, Congress perceived a national emergency "spawned by out-of-control litigation of employee minimum wage and overtime claims."  *Ellis*, 527 F.Supp.2d at 449 (citing 93 Cong. Rec. 2, 2,089-98, 2,182 9 (statements of Sen. Donnell)).  In response, Congress passed the Portal-to-Portal Act of 1947 ("PPA").  *Id.*  The PPA had two purposes, "limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions."  *Hoffman-La Roche Inc.,* 493 U.S. at 173.  In an effort to achieve these goals, the PPA added the requirement that any plaintiff in a FLSA representative actions under § 216(b) must expressly opt-in to participate in the case.  *De Asencio,* 342 F.3d at 306.  As the Third Circuit stated, Congress's adoption of an opt-in procedure for FLSA actions was a "crucial policy decision."  *Id.* at 311.

IV.  <u>Preclusive Effect of the *Rosenburg* Judgment</u>

    It is undeniable that present in every hybrid action is an inherent conflict between FLSA § 216(b)'s opt-in requirement and Rule 23's opt-out requirement.  In fact some courts have gone so far as to state that allowing hybrid actions would nullify the congressional intent behind § 216(b) and eviscerate the purpose of the section's opt-in requirement.  *See Otto v. Pocono Health Sys.*, 457 F.Supp.2d 522, 524 (M.D. Pa. 2006).  Indeed, the best solution to the dilemma

11

faced by the Court in this case might be to prohibit FLSA/Rule 23 hybrid actions all together.[3]

Nevertheless, the question of whether to allow a Rule 23 class action to proceed simultaneously

with a FLSA collective action is not before the Court.  The Northern District of California

already made the decision to allow the hybrid action in *Rosenburg* and granted final certification

of the class and collective action and approved the settlement.  The only question presented for

this Court to decide is whether Kuncl is bound by the final judgment entered in *Rosenburg*.

Because the Court finds that § 216(b) does not create an exception to the *res judicata* doctrine

and because Kuncl offers no basis for collaterally attacking the *Rosenburg* judgment, the Court

finds that the judgment is binding on him.

      Kuncl does not disputes that he was a proper member of the Rule 23 ERISA class in

*Rosenburg*.  Nor does Kuncl dispute that the *Rosenburg* judgment dismissed with prejudice all

claims released through the Settlement Agreement.  Pursuant to the Settlement Agreement, class

members who failed to opt-out of the litigation fully released IBM from any and all claims

arising out of the same facts alleged in the *Rosenburg* litigation up until the date of the final

judgment.  The Settlement Agreement specifically stated that "[t]he Released Claims include

without limitation claims asserted in the Litigation and any other claims based on alleged

misclassification under state or federal law governing overtime pay, . . .  including without

limitation claims under . . . the Fair Labor Standards Act . . ."  and laws and regulations of all

---

[3] The Court notes, however, that the same *res judicata* issues would be present if a judgment was entered in a pure Rule 23 state-law class action if the facts giving rise to the class action were the same facts that formed the basis of a subsequent FLSA action.  *See* Rachel K. Alexander, *Federal Tails and State Puppy Dogs: Preempting Parallel State Wage Claims to Preserve the Integrity of Federal Group Wage Actions*, 58 Am. U. L. Rev. 515 (February 2009) (advocating for the view that the FLSA preempts all state law wage and hour claims).

other states.  [Docket No. 33-8, at § 4.1].  Kuncl acknowledges that his current claims, in which he alleges he was misclassified as overtime exempt, arise out of the same factual predicate as the claims in *Rosenburg*.  In fact, Kuncl admits that he is bound by the release of his ERISA claims in *Rosenburg*, but argues that he is not similarly bound by the release of his FLSA claims because he did not opt-in to the collective action. [Docket No. 43, at 22:11-18].

Kuncl does not argue, nor could he make a good faith argument, that a normal *res judicata* analysis precludes him from bringing his pre-July 13, 2007, claims.  Instead, Kuncl argues that Congress created an exception to the normal *res judicata* rules by selecting an opt-in procedure for participation in FLSA collective actions under § 216(b).  In support of this argument Kuncl cites the language of § 216(b) along with the Congressional intent behind the statute.  Section 216(b) expressly requires that any potential plaintiff to a collective action must give written consent to become a party.  While the opt-in requirement in is not inconsistent with Kuncl's position, there is no further support for his argument that a normal *res judicata* analysis is inappropriate in this case.  No language in § 216(b) or anywhere else in the FLSA  provides for such an exception.  In regard to the Congressional intent, the Supreme Court found that the purposes behind the amendments to the FLSA were to "limit[ ] private FLSA plaintiffs to employees who asserted claims in their own right and free[ ] employers of the burden of representative actions."  *Hoffman-La Roche Inc.,* 493 U.S. at 173.  To the extent Kuncl's argument is supported by the goal of limiting FLSA plaintiffs to those who opt-in, it is offset  by the goal of reducing employers' burdens in respect to representative actions.  In fact, in enacting the PPA Congress appeared to be more concerned with protecting employers than with protecting employees.  *See* 29 U.S.C. § 251(a) (stating in its declaration of policy that judicial

interpretations of the FLSA had caused immense and unexpected liabilities for employers and would bring about "financial ruin" of many employers if allowed to continue). Allowing Kuncl to sue IBM in this case for claims that he expressly released in *Rosenburg* would be contrary to the goal of freeing employers from the burdens of representative actions.

Also working against Kuncl's argument for an exception to *res judicata* principles are the policy considerations behind class actions and the *res judicata* doctrine. As discussed above, both class actions and *res judicata* serve the interests of finality and conservation of judicial resources by avoiding repetitive litigation. Additionally, several circuits have held that class action settlements can release claims that could not have been presented in the class action itself, provided the claims arise out of the same facts as the class action. *See In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d at 366. Considering all the factors discussed, the Court finds no basis either in § 216(b) or in the Congressional intent behind the statute to hold that *res judicata* principles do not apply to hybrid claims. The election of the opt-in requirement for FLSA collective actions, without more, simply cannot be stretched into a broad exception to fundamental principles of law. On the other hand, the Court finds the strong policy interests of finality and conservation of judicial resources support IBM's argument that Kuncl is precluded from bringing claims covered by the *Rosenburg* judgment. Allowing Kuncl to litigate his misclassification claims against IBM twice would undermine the goals behind class actions and promote, rather than avoid, repetitive litigation.

Because the Court finds that the FLSA provides no exception to normal *res judicata* principles, Kuncl's claims can only survive if he shows there are grounds for a collateral attack

on the *Rosenburg* judgment.  A collateral attack on a judgment "is any proceeding in which the integrity of a judgment is challenged, except for a challenge made in the action in which the judgment is rendered, or by appeal."  Karl Oakes, 21A *Federal Procedure, Lawyers Edition* § 51:221 (2008).  The Tenth Circuit has held that collateral attacks on class action judgments are only permissible when a class member was not accorded due process of law.  *Pelt*, 539 F.3d at 1284.  An absent class member received  due process if it was adequately represented by the present parties.  *Id*.  In the Tenth Circuit, "[t]he question of adequate representation can best be resolved by determining whether the interests of those who would attack the judgment were vigorously pursued and protected in the class action by qualified counsel."  *Garcia v. Board of Ed.*, 573 F.2d 676, 680 (10th Cir. 1978).

Kuncl contends that he is not attempting to collaterally attack the *Rosenburg* judgment. However, Kuncl is not challenging the *Rosenburg* judgment either through a Rule 60(b) motion in the Northern District of California or through a direct appeal.  Rather, he filed a subsequent suit in this Court and is asserting that the judgment, which on its face purports to dispose of his claims, has no preclusive effect on him.  By definition, Kuncl's actions constitute a collateral attack of the *Rosenburg* judgment.  As previously stated, a collateral attack on a class action judgment "is impermissible when the class members were adequately represented."  *Id.* at 679. Kuncl does not argue that he was inadequately represented in *Rosenburg*.  To the contrary, during the hearing on this issue Kuncl's counsel stated "I'm not here today to criticize what happened in *Rosenburg*, nor am I here to attack or have this Court go back and second guess the judge in the Northern District of California." [Docket No. 44, at 29:12-15].   Additionally, Kuncl admits that he received "actual notice" of the *Rosenburg* class and the settlement. [Docket No.

15

44, at 5:15-17].  Without demonstrating inadequate representation Kuncl cannot collaterally attack the *Rosenburg* judgment.   Because there are no grounds for a collateral attack, the principles of *res judicata*, more specifically the doctrine of claim preclusion, prevent Kuncl from relitigating claims that were released in *Rosenburg*.

The Court's decision should not be taken as an endorsement of Rule 23/FLSA hybrid actions.  Kuncl raises legitimate concerns regarding the incompatibility of the various opt-in and opt-out schemes.[4]  However, even if the Court disagreed with the *Rosenburg* Court's rulings, it is not a basis for disregarding the judgment entered in that case.  *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398 (1981) (holding that erroneous decision reached by one court does not deprive defendants in a later action from relying on the doctrine of *res judicata*, nor does it constitute grounds for a collateral attack).

## CONCLUSION

The Court finds that the doctrine of *res judicata* bars  Kuncl's claims that arose before July 13, 2007, the date the final judgment in *Rosenburg* was entered.[5]  As a result, Plaintiff's discovery requests relating to pre-July 13, 2007, claims cannot lead to admissible evidence and Kuncl's Motion to Compel is hereby DENIED.

---

[4]  Kuncl's argument regarding the inherent conflict caused by the different notice requirements present in hybrid claims would be more appropriate and more convincing at a different stage of the litigation, such as the class certification stage or in a direct attack on the *Rosenburg* judgment.

[5]  Although this issue was addressed through Plaintiff's Motion to Compel, the Court intends the decision rendered in this Order to be the law of the case going forward and does not intend to allow the issue to be reargued at a later point in this litigation.

IT IS SO ORDERED.

James H. Payne
United States District Judge
Northern District of Oklahoma